UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHEYENNE GREGGS,

          Plaintiff,

v.

ANDREWS UNIVERSITY; JOHN DOE, Pastor of
Mount Carmel Seventh Day Adventist Church;
NEWTON W, HOILETTE, Vice-President for
Students and Member of the Sexual Harassment
Committee; NANCY J. CARBONELL, Ph.D.,
Counseling, Psychology and Sexual Harassment
Compliance Officer; NIELS-ERIK ANDREASEN,
Andrews University President; DR. GLENDA-MAE
GREENE, Student Services Assistant Vice-
President; SPENCER CARTER, Andrews University
Assistant Dean of Men; DEXTER SADDLER;
PAUL FLYGER; and VINCENT DAVID, Andrews
University Dean of Graduate Students,

          Defendants.
_____

5:12-CV-01853
(NAM/TWD)

APPEARANCES:

CHEYENNE GREGGS
Plaintiff *pro se*
10171 Destiny USA Drive
Syracuse, NY 13290

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

  *Pro se* Plaintiff Cheyenne Greggs seeks leave to proceed *in forma pauperis* against

Defendant Andrews University, a not-for-profit corporation which derives its authority from the

General Conference of Seventh-day Adventist; numerous University officials allegedly involved

in his expulsion from the University for sexual misconduct in March of 1997 and/or the litigation

that followed; two students who were alleged to have been involved in the event upon which the sexual misconduct charge was based; and John Doe, Pastor of Mount Carmel Seventh-day Adventist Church in Syracuse, New York. (Dkt. Nos. 1 and 3.)

## I. ALLEGATIONS IN THE COMPLAINT

Plaintiff, an African American, was a graduate student at Andrews University ("University) in Berrien Springs, Michigan in the summer of 1996. (Dkt. No. 1 at ¶ 1 and p. 15.) When Plaintiff began hearing rumors of homosexual activity on campus by male students and faculty, Plaintiff shared the rumors with University Dean of Graduate Students, Defendant Vincent David ("David") and asked him to investigate because homosexuality was against the rules in the University Student Handbook and against the traditions and beliefs of the Seventh-day Adventist Church's biblical standards of morality. *Id*. at ¶¶ 3-4 and p. 3. According to Plaintiff, he told David that if the rumors were true, the University should know of the person's sexuality so students like Plaintiff, who were not gay, could have a choice whether to room with someone who was. *Id*. at ¶ 4.

David told Plaintiff he should mind his own business and said something to the effect "let's just say that birds of a feather usually flock together." *Id*. Plaintiff then informed David, "Well, if I find out, I'm going to expose everybody involved because I came all the way to Michigan to study music and get a doctors degree in music, not a doctor's degree in male anatomy." *Id*. at ¶ 6.

Six months later, on February 13, 1997, Defendant Newton W. Hoilette (Hoilette"), Vice-President for Students and Member of the Sexual Harassment Committee at the University, sent Plaintiff a letter informing him that a committee, chaired by Defendant Nancy Carbonell

("Carbonell"), University Counseling, Psychology, and Sexual Harassment Compliance Officer, had been formed to investigate a claim by Defendant Dexter Saddler ("Saddler") that he had been raped by Defendant Paul Flyger ("Flyger"). *Id*. at ¶¶ 9-10 and pp. 3, 15. Defendant Hoilette wrote: "This letter is to confirm the fact committee is interested in interviewing you because both Dexter Saddler and Paul Flyger have implicated you as being involved with the circumstances surrounding the accusations made by Dexter . . . ." *Id.* at ¶ 10. Plaintiff claims that Defendants "forced, coerced, and intimidated" Dexter and Flyger into falsely naming him as a member of a homosexual ring in retaliation for Plaintiff having previously voiced his concerns about homosexuality on campus. *Id*. at ¶ 9.

Defendant Carbonell also wrote to Plaintiff on February 13, 1997, charging him with sexual harassment and advising him that the Sexual Harassment Committee had been instructed to conduct a thorough investigation of Saddler's sexual harassment complaint against Plaintiff pursuant to University Policy #2:273:5:3.[1] *Id*. at ¶ 15 and p. 16. Plaintiff was invited to attend a meeting of the Sexual Harassment Committee at which he would be given an opportunity to defend himself. *Id*. at p. 16. The letter also invited Plaintiff to review the official complaint against him before the meeting and informed him of the procedure to be followed. *Id*. Plaintiff was placed on notice that if he decided not to appear at the meeting "the committee will have no other choice than to regard the complaint to be true, and act accordingly. *Id.*

Despite having been invited to review the complaint against him, Plaintiff claimed at the March 3, 1997 meeting that he had been unable to effectively respond to the charges because

---

[1] It is unclear whether the correct section reference is 3:273:5:3 rather than 2:273:5:2. (*See* Dkt. No. 1 at p. 46.)

when he requested copies of the charges that had been filed against him, the Committee refused to give him copies, claiming that they were confidential. *Id*. at ¶ 26. On March 19, 1997, Defendant Hoilette sent Plaintiff a letter informing him that the Sexual Harassment Committee had reported its findings and recommendations, which the University President had accepted, and that Plaintiff was dismissed from the University effective March 20, 1997. *Id*. at ¶ 30 and p. 18. Plaintiff's appeal from the determination was denied by University President Defendant Niels-Erick Andreasen ("Andreasen"). *Id*. at p. 19.

According to Plaintiff, the allegations against him were false, and the Defendants had conspired to engage in a massive fraud that included making false accusations against him concerning homosexual rape, which led to his dismissal from the University in violation of his rights to due process and equal protection, and his right to be free from discrimination, all in violation of the Michigan State Constitution, the United States Constitution, and the University's 1996/1997 Student Handbook. *Id*. at ¶¶ 31-33 and pp. 1, 9-12. Plaintiff also claims that Defendants fraudulently concealed that they had improperly relied on the procedures for dealing with sexual harassment complaints set forth in the Employer-Employee Policy, rather than the Student Handbook, until the statute of limitations had run. *Id*. at pp. 1, 9-12. Plaintiff claims that he did not learn that Defendants had not followed the procedures in the Student Handbook until December 17, 2009. *Id*. at p. 11.

## II.     PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 3), the Court finds that Plaintiff may properly proceed with this matter *in forma pauperis*.

## III. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

28 U.S.C. § 1915(e) directs that even when a plaintiff meets the financial criteria for *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendants*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). Despite the mandatory language of § 1915(e), "*pro se* plaintiffs appearing in forma pauperis should be afforded the same opportunity as a *pro se* fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999).

## IV. ANALYSIS

Plaintiff has commenced this civil rights action pursuant to 42 U.S.C. §§ 1981, 1982, 1983, and 1985 and claims that Defendants have violated his constitutional rights under the First, Fourth, Fifth, Ninth, Thirteenth, and Fourteenth Amendments to the United States Constitution.[2] (Dkt. No. 1 at p. 2, n.1.) Plaintiff may also be attempting to assert a state law claim for fraud. *See, e.g., id.* at ¶¶ 11-12, 31. Furthermore, Plaintiff is attempting to avoid dismissal of his claims on statute of limitations grounds by claiming that Defendants fraudulently concealed their reliance on the Employer-Employee Policy for addressing the sexual harassment claim asserted against Plaintiff rather than the Student Handbook. *Id.* at p. 1.

---

[2] 42 U.S.C. § 1982 provides that "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." The provision has no relevance to Plaintiff's claims. Likewise, the Fourth Amendment against search and seizure, the Ninth Amendment, and the Thirteenth Amendment abolishing slavery are without relevance to Plaintiff's claims.

### A.     Plaintiff's Claim Under 42 U.S.C. § 1981

Section 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a).  The statute's prohibitions apply to private actors, including private academic institutions.  *Yusuf v. Vassar College*, 35 F.3d 709, 714 (2d Cir. 1994); *see also Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006) (Section 1981 "prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors.").  To establish a claim under § 1981, a plaintiff must show that (1) he or she is a member of a minority race; (2) that a defendant intended to discriminate against plaintiff on the basis of race; and (3) plaintiff was subjected to discrimination concerning one or more of the activities enumerated in § 1981.  *Lauture v. Int'l Bus. Machines Corp.*, 216 F.3d 258, 261 (2d Cir. 2000).  To state a claim, a plaintiff must "specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent."  *Yusuf*, 35 F.3d at 713.  "[A] complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Act, fails to state a claim . . . ."  *Id*. (quoting *Martin v. N.Y State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978) (per curiam)).

While Plaintiff has described himself as African American in his Complaint, he has alleged no facts that give rise to a plausible inference that any of the Defendants involved in the making or handling of the sexual harassment charge asserted against him, or his dismissal from

the University, intended to discriminate against Plaintiff on account of his race. (Dkt. No. 1 at p. 3.) In fact, Plaintiff has alleged that he was charged with sexual harassment in retaliation for informing Defendant David that there was homosexual activity going on among males at the University, and that Defendants Saddler and Flyger were allowed to stay at the University because they agreed to manufacture a rape charge against Plaintiff, not because they were white. (Dkt. No. 1 at ¶¶ 14, 31.) Given the foregoing, the Court concludes that Plaintiff has failed to state a claim under § 1981.

Plaintiff's claim under § 1981 is also barred under the applicable statute of limitations.[3] The statute of limitations on a claim under § 1981 is three years, unless the claim arises out of a post-1990 Act of Congress, such as the 1991 Amendments to § 1981 pertaining to discrimination in contractual relationships, in which case the statute of limitations is four years. *See Feliciano v. County of Suffolk*, No. CV 04-5321 (JS)(AKT), 2013 WL 1310399, at *6, 2013 U.S. Dist. LEXIS 44946, at *17 (E.D.N.Y. Mar. 28, 2013). Claims asserted under 42 U.S.C. §§ 1981, 1983, and 1985 accrue "when the plaintiff becomes aware that he is suffering a wrong for which damages may be recovered in a civil action." *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980). In this case, the alleged wrong was Plaintiff's dismissal from the University in March of 1997.

Plaintiff is seeking an equitable tolling of the statutes of limitations applicable to his claims on the grounds that the University fraudulently concealed that it had used the procedures provided for in the school's Employer-Employee's Handbook rather than those in the Student

---

[3] A claim can be dismissed for failure to state a claim pre-answer where it is clear from dates set forth in the complaint that it is barred by the applicable statute of limitations. *See Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).

Handbook. (Dkt. No. 1 at p. 26.) "Equitable tolling . . . may be invoked when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Abbas v. Dixon,* 480 F.3d 636, 642 (2d Cir. 2007); *see also Pearl v. City of Long Beach*, 296 F.3d 76, 85 (2d. Cir. 2002) ("Although we have broadly stated . . . that we will apply the equitable tolling doctrine as a matter of fairness where a plaintiff has been prevented in some extraordinary way from exercising his rights, . . . we made it clear that we had in mind a situation where a plaintiff could show that it would have been *impossible* for a reasonably prudent person to learn about his or her cause of action.") (citations and internal quotation marks omitted; emphasis in original). When equitable tolling applies, "the statute [of limitations] does not begin to run until the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice." *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985) (internal quotation marks omitted).

Equitable tolling is "the exception, not the rule," *Rotella v. Wood*, 528 U.S. 549, 561 (2000), and "[t]he burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff." *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000). "To invoke the doctrine of fraudulent concealment properly [for purposes of seeking an equitable tolling of the statute of limitations], a plaintiff must establish three elements, including: (1) wrongful concealment by defendants (2) which prevented plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing the discovery of the claim." *New York Dist. Council of Carpenters Pension Fund v. Forde*, No. 11 Civ. 5474 (LAP), 2013 WL 1454954, at *7, 2013 U.S. Dist, LEXIS 49834, at *21-22 (S.D.N.Y. March 26, 2013) (citing *In re Merrill*

9

*Lynch Ltd. P'Ships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998)). Plaintiff must plead each element with specificity as required under Rule 9(b). *Forde*, 2013 WL 1454954, at *7. Plaintiff has not set forth facts in his Complaint showing that even if Defendants wrongfully concealed that the University had not followed the disciplinary procedures in the Student Handbook, he acted with due diligence in pursuing discovery of his claim. Plaintiff's Complaint contains no allegations suggesting due diligence on his part. In fact, his Complaint reveals no dealings or communications between Plaintiff and Defendants from the time he lost his lawsuit for intentional infliction of emotional distress and defamation against the University in Michigan state court in August of 1999 (Dkt. No. 1 at p. 10) until Plaintiff made a Freedom of Information Act request of the University in September of 2009, a decade later.[4] Plaintiff, therefore, has failed to set forth facts showing a plausible argument for an equitable tolling of the statute of limitations on Plaintiff's § 1983 claim.[5]

In addition, other than conclusory allegations that Defendants systematically do business

---

[4] Plaintiff contends that Defendants defrauded the Michigan Supreme Court in his state court lawsuit for intentional infliction and defamation by introducing evidence that the sexual harassment claim against him was handled pursuant to the procedures in the Student Handbook rather the Employers-Employee Handbook. (Dkt No. 1 at p. 10.) The Michigan Court of Appeals decision affirming the grant of summary judgment against Plaintiff in *Cheyenne Greggs v. Andrews University*, No. 234627, 2003 WL 1689619, at *2, 2003 LEXIS 827, at *4 (Mich.App. Mar. 27, 2003) (per curiam), however, states that "Dr. Hoilette appointed the Sexual Harassment Committee to investigate the complaint according to the formal procedure outlined in the Andrews University Policy Handbook, policy #3:273:5:3." In addition, the Michigan Court noted that the Sexual Harassment Committee finding against Plaintiff came only after review of "written reports, interviewing the parties involved, listening to audio tapes presented to the committee, and after assessing the credibility of the parties involved. . . ." *Id*.

[5] Neither the allegations in Plaintiff's Complaint nor the exhibits thereto implicate Defendants Saddler or Flyger in the alleged fraudulent concealment leaving no question but that his §§ 1981, 1983, and 1985(3) claims against them are all barred by the applicable statutes of limitations.

10

in New York State and that they traveled to New York via their attorney, Plaintiff's Complaint is devoid of factual allegations showing long-arm jurisdiction over any of the Michigan based Defendants or Saddler and Flyger wherever they may reside. Therefore, the Michigan Defendants would have a personal jurisdiction defense to all of Plaintiff's claims were he allowed to proceed. *See Doe v. City of New York*, 583 F. Supp. 2d 444, 447 (S.D.N.Y. 2008) (in a civil rights action, a federal court sitting in New York State must apply the New York long-arm statutes in determining whether there is personal jurisdiction over a non-domiciliary defendant).

    **B.**    **Plaintiff's Claim Under 42 U.S.C. § 1983**

To state a claim under § 1983, a plaintiff must allege that: "(1) the conduct complained of [was] committed by a person acting under color of state law; and (2)"the conduct complained of . . . deprived [the plaintiff] of rights, privileges or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir.1994). The purpose of § 1983 is to "deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

It is well settled that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted). A plaintiff must therefore allege facts showing that a defendant was either a state actor or a private party acting under color of state law.[6] *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d

---

[6] Plaintiff has alleged that Defendants conspired to bring false charges of rape or sexual harassment against him. (Dkt. No. 1 at p. 12.) A conspiracy claim under § 1983 requires facts demonstrating that a private entity or individual acted in concert with a state actor to commit an

Cir. 2002); *see also United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'").[7] Private actors do not engage in "state action" unless they are "willful participant[s] in joint activity with the State or its agents."[8] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (citing *United States v. Price*, 383 U.S. 787, 794 (1966)).

Plaintiff acknowledges that Andrews University is a private entity — a not-for-profit corporation, which derives its authority from the General Conference of Seventh-day Adventist. (Dkt. No. 1 at p. 3.) The Complaint is devoid of facts suggesting that the University was acting under color of state law or was a state actor in connection with its handling of the sexual harassment claim against Plaintiff. *See Rose v. Kenyon College*, 211 F. Supp. 2d 931, 938 (S.D. Ohio 2002) (private college not acting in concert with state actors is not subject to liability under § 1983 for alleged deprivations of due process and equal protection during proceedings to expel student for sexual assault); *see also Albert v. Carovano*, 851 F.2d 561, 566 (2d Cir. 1988) (private

---

unconstitutional act. *Ciambriello*, 292 F.3d at 324. Plaintiff has not identified any state actors involved in the alleged conspiracy. Furthermore, in the Sixth Circuit where Michigan is located, has determined that a corporation cannot conspire with its own employees. *Johnson v. Hills & Dales General Hosp.*, 40 F.3d 837, 839-40 (6th Cir. 1994).

[7] A plaintiff is required to allege state action on the part of the defendants in his complaint; and where he fails to do so, a court may dismiss an action under § 1915(e). *See O'Neil v. Bebee*, No. 5:09-CV-1133 (GTS/DEP), 2010 WL 502948, at *5, 2010 U.S. Dist. LEXIS 11639, at *19 (N.D.N.Y. Feb. 10, 2010).

[8] Plaintiff's conclusory allegation that Defendants agreed with each other and unidentified state officials to deny him due process is insufficient to show state action by Defendants. (Dkt. No. 1 at p. 3.)

college's discipline of students did not constitute state action where college's rules of conduct were adopted pursuant to a state law requirement that colleges adopt rules of conduct and provide for appropriate disciplinary action in the event of violation.) Nor has Plaintiff alleged any facts showing that the individual Defendants were acting under color of state law or were state actors. Defendants Hoilette, Carbonell, Andreasen, Dr. Glenda-Mae Greene ("Greene"), Spencer Carter, and David are all identified as officials at the University. *Id*. Defendant Saddler is described as a student and Flyger a graduate assistant at the University. *Id*. at ¶ 8. There are no factual allegations in the Complaint indicating that Defendant John Doe, a Syracuse Seventh-day Adventist pastor, had any involvement whatsoever in the sexual harassment matter that resulted in Plaintiff's discharge from the University.[9]

It is also clear from the face of Plaintiff's complaint that his § 1983 claim is barred by the applicable statute of limitations. Claims brought under § 1983 have a three year statute of limitations. *Owens v. Okure*, 488 U.S. 235, 250-51 (1989); *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994). Furthermore, the deficiencies in Plaintiff's allegations of fraudulent concealment described with regard to his § 1981 claim apply to his claim under § 1983. Moreover, even if the district court were to find that the statute of limitations should be equitably tolled, given the absence of allegations that the Defendants were state actors or acting under color of state law, Plaintiff would have no claim under § 1983 regardless of whether Defendants failed to follow the

---

[9] Because there are no factual allegations regarding Plaintiff John Doe other than that he is a Seventh-day Adventist pastor in Syracuse, New York, Plaintiff has failed to state a claim against him. *See, e.g., Holder v. State of N.Y.*, No. 98 Civ. 0354 (MBM), 1998 WL 744021, at *3, 1998 U.S. Dist. LEXIS 16756, at *6 (S.D.N.Y. Oct. 26, 1998) (dismissal for failure to state a claim is proper where complaint lists party as a defendant in the caption but there are no allegations showing his direct personal involvement).

13

Student Handbook disciplinary procedures.

Plaintiff has, therefore, failed to state a § 1983 claim against any of the Defendants.

C. **Plaintiff's Claim Under 42 U.S.C. § 1985**

Plaintiff claims that the Defendants conspired to engage in a massive fraud against him that included false accusations of homosexual rape, which led to his discharge from the University in violation of his rights to equal protection and due process and the Student Handbook in violation of §1985. (Dkt. No 1. at ¶¶ 31-33 and pp. 1, 9-12.) The elements of a claim under § 1985(3) are "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, . . .; (3) an act in furtherance of the conspiracy; (4) whereby a person is . . . deprived of any right of a citizen of the United States." *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000) (quoting *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)), *overruled in part on other grounds by Gonzaga Univ. v. Doe,* 536 U.S. 273 (200). "[T]he conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *See Mian*, 7 F.3d at 1088 (citation and internal quotation marks omitted). Moreover, "[a] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights" fails to state a claim. *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993) (internal citations omitted).

As previously noted, Plaintiff has not alleged facts showing that the alleged conspiracy was motivated by racial animus, but rather that the Defendants conspired to accuse him of homosexual rape because he had informed Defendant David of homosexual activity on campus. (Dkt. No. 1 at ¶¶ 14, 31.) Furthermore, the allegations of conspiracy in Plaintiff's Complaint are

wholly conclusory. Therefore, Plaintiff has failed to state a claim under § 1985(3).

In addition, the statute of limitations for a claim under § 1985(3) is three years. *Salahuddin v. Coughlin*, 647 F. Supp. 49, 51 (S.D.N.Y. 1986). Therefore, as with Plaintiff's claims under §§ 1981 and 1983, his § 1985(3) is barred absent an equitable tolling, and as with his claims under §§ 1981 and 1983, the factual allegations in Plaintiff's Complaint fail to support a facially plausible argument for equitable tolling.

### D.     Plaintiff's Fraud Claim

In addition to his fraudulent concealment claim, Plaintiff may be attempting to assert a state law fraud claim against Defendants in connection with the homosexual rape/sexual harassment claim made against him while he was a student at the University sixteen years ago. (*See* Dkt. No. 1 at ¶¶ 11-12, 3.) However, Plaintiff has failed to state a claim for fraud against the Defendants under Michigan law, the state in which the fraud allegedly occurred.

To state a fraud claim under Michigan law, the Plaintiff must allege facts making a plausible showing of the following six elements: "(1) the defendant made a material misrepresentation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) the defendant made it with the intention that the plaintiff should act upon it; (5) the plaintiff acted in reliance upon the representation; and the (6) plaintiff thereby suffered injury." *England v. Mortgage Electronic Registration Systems*, No. 13-10438, 2013 WL 1812194, at * 3, 2013 U.S. Dist. LEXIS 61328, at *9 (E.D. Mich. April 30, 2013). In addition, Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud . . . a party must state with particularity, the circumstances constituting fraud . . . ."

Plaintiff's conclusory allegations that claims asserted against him by Defendants were fraudulent neither state a fraud claim under Michigan law nor satisfy the pleading requirements of Rule 9(b). Even if Plaintiff's Complaint did state a claim for fraud, the claim would be barred under the applicable statute of limitations. *See Brook, III v. AXA Advisors, LCC*, 961 N.Y.S. 2d 648, 649-50 (4th Dep't 2013) (The statute of limitations for fraud is "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff[s] . . . discovered the fraud, or could with reasonable diligence have discovered it.") (quoting N.Y. Civil Practice Rules and Laws 213[8]).

Furthermore, because Defendant Doe is alleged to be pastor in a Syracuse, New York church, and Plaintiff resides in New York, there is not complete diversity and, therefore, no subject matter jurisdiction over a state law fraud claim by Plaintiff unless the district court elects to exercise supplemental jurisdiction. *See Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (complete diversity is required under 28 U.S.C. § 1332). "In the absence of original federal jurisdiction, the decision of whether to exercise supplemental jurisdiction over pendent state claims is within the court's discretion. *Butler v. LaBarge*, No. 9:09-cv-1106 (GLS/DRH), 2010 WL 3907258, at *3, 2010 U.S. Dist. LEXIS 104701, at *9 (N.D.N.Y. Sept. 30, 2010) (citing *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 121-22 (2d Cir. 2006)). When all federal claims are eliminated before trial, the balance of factors in deciding whether to exercise jurisdiction over remaining state law claims leans toward dismissal. *Kolari*, 455 F.3d at 122.

A court may choose to exercise jurisdiction if a state law claim raises an important issue of federal policy. *See id.* at 122-23. Here, Plaintiff has not alleged a plausible federal civil rights

claim against Defendants. Moreover, his Complaint does not appear to raise any important issue of federal policy. Therefore, even if Plaintiff had stated a claim for fraud against Defendants, there appears to be no basis for the district court to exercise its discretion in favor of finding supplemental jurisdiction over Plaintiff's fraud claim.

    **E.**    **Summary**

For the reasons set forth in this Order and Report-Recommendation, the Court recommends that Plaintiff's Complaint be dismissed in its entirety for failure to state a claim pursuant to § 1915(e). It appears unlikely to this Court that Plaintiff will be able to state any claim against Defendants, and even if he can, it seems unlikely he can state a claim over which the district court will have personal jurisdiction and which will not be barred by the statute of limitations. Nonetheless, because when a court dismisses a *pro se* complaint pursuant to § 1915(e), the plaintiff is to be afforded an opportunity to amend his pleading "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim, the Court recommends that Plaintiff be granted leave to serve an amended complaint as to all of the Defendants except Doe, Saddler, and Flyger. *See Cruz v. Gomez,* 202 F.3d 593, 597-98 (2d Cir. 2000) (quoting *Gomez,* 171 F.3d at 796). As to Doe, Saddler, and Flyger, the Court seeing no way in which Plaintiff can state a claim against them, recommends that the dismissal be without leave to amend

    **ACCORDINGLY**, it is hereby

    **ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 3) is **GRANTED**; and it is

    **RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be dismissed in its entirety

pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim; and it is further

**RECOMMENDED** that Plaintiff be granted leave to serve an amended complaint as to all Defendants except Doe, Saddler, and Flyger, against whom Plaintiff's Complaint is dismissed with prejudice; and it is further

**RECOMMENDED** that in the event Plaintiff is granted leave to serve an amended complaint that the district court direct Plaintiff that any amended complaint filed in the action must include factual allegations describing the role of each named Defendant sufficiently to allow the Court to assess whether a plausible claim has been stated against them; and that it be a wholly integrated and complete pleading, with separately numbered allegations, that does not rely upon or incorporate by reference pleadings previously filed in the action; and it is further

**ORDERED** that any paper sent by a party to the Court or the Clerk shall be accompanied by a certificate setting forth the date a true and correct copy of it was mailed to all opposing parties or their counsel. **Any letter or other document received by the Clerk or the Court which does not include a certificate of service which clearly states that an identical copy was served upon all opposing parties or their attorneys is to be returned, without processing, by the Clerk.** Plaintiff shall also comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All motions shall comply with the Local Rules of Practice of the Northern District; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation, along with copies of all unpublished decisions cited herein, on Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure 72.

Dated: May 16, 2013
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge